UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| ELIZABETH STEFAN, | ) |  |
|---|---|---|
| aka, STEFAN GYORGNE | ) |  |
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| v. | ) | No. 3:08 CV 471 |
|  | ) |  |
| JEFFREY J. STESIAK, ESQ. and, | ) |  |
| SWEENEY, PFEIFER, | ) |  |
| MORGAN & STESIAK | ) |  |
|  | ) |  |
| Defendants. | ) |  |

## OPINION and ORDER

### I. BACKGROUND

This matter is before the court on defendants' motion for summary judgment. (Defs.' Mot. for Summ. J., DE # 35.) This case stems from a single vehicle car accident that occurred on May 3, 1998, in which plaintiff, a resident of Hungary, was a passenger in a car driven by Lajos Vesgo. As a result of the accident, plaintiff became (and continues to be) quadriplegic. Though the facts surrounding plaintiff's retention of the defendant, Jeffrey J. Stesiak, Esq., as her attorney are somewhat disputed, both parties appear to agree that Stesiak proceeded to perform legal services for plaintiff following the accident in an attempt to recover money for her injuries.

Neither party appears to seriously dispute that Vesgo, personally, was not a viable source of monetary recovery. However, Vesgo had two insurance policies: one through Grange Mutual Insurance and one through Auto Owners Insurance. Through Stesiak, plaintiff received $100,000 of a possible $100,000 for bodily injury under the

Grange policy. As part of the arrangement with Grange, Grange and plaintiff signed a Covenant Not To Sue or Execute, which released Grange from further liability. Plaintiff signed through her "attorney in fact," Zoltan Hankovszky, a New York attorney who it appears agreed to assist plaintiff by communicating with Stesiak in the United States while she continued to live in her native Hungary. Apparently there were modifications made to the Covenant; Stesiak was a signatory to the "Second Addendum to the Covenant Not to Sue or Execute," in which he and his law firm agreed to "satisfy any and all liens, claims, demands, actions and causes of action, for any damages, costs, loss of services, expenses and compensations, heretofore or hereafter sustained on account of, or in any way growing out of an accident, casualty, or event that occurred on May 3, 1998 . . . ." (DE # 46-4.) Plaintiff received the proceeds of the settlement with Grange in January 2001.

In April of 2000, Stesiak filed suit on plaintiff's behalf against Vesgo in Marshall County Circuit Court to seek recovery under the Auto Owners policy. The record indicates that this case concluded on May 21, 2003, when the court accepted the parties' stipulation of dismissal with prejudice. The parties dispute whether plaintiff knew of and/or agreed to the dismissal. Stesiak claims that he learned that the Auto Owners insurance policy contained an exclusion that rendered plaintiff's lawsuit meritless. He further claims that he discussed the matter with Hankovszky, who assented to the dismissal of the action. It is unclear if or when plaintiff herself learned of the lawsuit's dismissal, although she claims through argument of counsel in her response brief that

2

she did not know that the suit was dismissed until 2008, when she sought her present counsel.

The record reveals that Hankovszky was not the only representative of plaintiff that communicated with Stesiak over the years. The various individuals who contacted Stesiak regarding plaintiff's case included Laszio Stefan in 1999; a "Dr. Radvanyi" in 1999; the aforementioned New York attorney, Hankovszky from 2000 to 2001; a Hungarian lawyer named Krisztian Frohlich from 2001 to 2002; and a South Bend, Indiana, attorney named E. Spence Walton in 2003, who was asked to contact Stesiak by "an attorney in Tuscon, Arizona." (DE # 41-5 at 12.) Communications with these individuals appear in various places in the record, some of them extensive in nature. Among them is a letter dated November 9, 2003, in which Stesiak wrote to Walton that once he realized there was no coverage for plaintiff's claim under the Auto Owners policy, "we dismissed the lawsuit." (DE # 41-5 at 18.) Walton responded to Stesiak that Walton sent the information along, but it is not clear to whom Walton sent it.

After Stesiak's communication with Walton in November of 2003, it appears that the next communication between any representative of plaintiff and Stesiak occurred in September of 2005 when Stesiak sent plaintiff a check for $900, which had been in his trust account. Years later, in April of 2008, Stesiak was contacted by plaintiff's present counsel. On October 16, 2008, plaintiff filed suit against Stesiak and his firm, Sweeney, Pfeifer, Morgan & Stesiak, alleging legal malpractice, breach of contract based on the Second Addendum to the Covenant Not to Sue, fraud, and breach of fiduciary duty.

The basic thrust of plaintiff's lawsuit is that Stesiak erred in failing to properly pursue recovery under the Auto Owners Insurance policy. Defendants have now moved for summary judgment arguing primarily that plaintiff's complaint was untimely filed.

## II. LEGAL STANDARD

The FEDERAL RULES OF CIVIL PROCEDURE mandate that motions for summary judgment be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). RULE 56(c) further requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). "[S]ummary judgment is appropriate–in fact, is mandated–where there are no disputed issues of material fact and the movant must prevail as a matter of law. In other words, the record must reveal that no reasonable jury could find for the non-moving party." *Dempsey v. Atchison, Topeka, & Santa Fe Ry. Co.,* 16 F.3d 832, 836 (7th Cir. 1994) (citations and quotation marks omitted).

The moving party bears the initial burden of demonstrating that these requirements have been met; it may discharge this responsibility by showing that there is an absence of evidence to support the non-moving party's case. *Carmichael v. Village of Palatine, Ill.,* 605 F.3d 451, 460 (7th Cir. 2010) (citing *Celotex,* 477 U.S. at 323). To

4

overcome a motion for summary judgment, the non-moving party must come forward with specific facts demonstrating that there is a genuine issue for trial. *Id.* (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). The existence of a mere scintilla of evidence, however, is insufficient to fulfill this requirement. *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The nonmoving party must show that there is evidence upon which a jury reasonably could find for him. *Id.*

The court's role in deciding a summary judgment motion is not to evaluate the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *Anderson,* 477 U.S. at 249-50; *Doe v. R.R. Donnelley & Sons Co.*, 42 F.3d 439, 443 (7th Cir. 1994). In viewing the facts presented on a motion for summary judgment, the court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences in favor of that party. *NLFC, Inc. v. Devcom Mid-Am., Inc.*, 45 F.3d 231, 234 (7th Cir. 1995); *Doe,* 42 F.3d at 443.

### III. DISCUSSION

Defendants have moved for summary judgment on all of plaintiff's claims, arguing that the complaint was filed in excess of the statute of limitations. The statute of limitations for claims of legal malpractice is two years under Indiana law. Ind. Code § 34-11-2-4.[1] Two additional Indiana law doctrines may modify the accrual date for the

---

[1] Defendants argue that all of plaintiff's claims sound in malpractice, and therefore all of plaintiff's claims are subject to the two-year limitations period but defendants make no argument that plaintiff's claims would be untimely if subject to any other limitations period. If the court rejects defendants' characterization of plaintiff's claims, and plaintiff's "non-malpractice" claims (those claims not technically designated

running of the limitations period under certain circumstances. First, Indiana law adheres to the "discovery rule" for legal malpractice cases, which delays the date of accrual until the date a plaintiff discovers that she has been injured. *Biomet, Inc. v. Barnes & Thornburg,* 791 N.E.2d 760, 765 (Ind. App. Ct. 2003). Second, the Indiana courts have held that the "continuous representation rule" may further extend the date of accrual until the termination of the attorney's representation. *Id.* at 767.

Either or both of these doctrines could affect the date of accrual with respect to plaintiff's claims. However, defendants have not shown that there are no genuine issues of material fact relevant to what date plaintiff's claims accrued. Instead, defendants have merely confused the facts and have failed to present a coherent argument justifying summary judgment. For example, defendants repeatedly assert that plaintiff's lawsuit against Vesgo was dismissed on November 9, 2003. (*See, e.g.,* Defs.' Mot. for Summ. J. 1, 4, 8, 10; Defs.' Reply 3-4; *see also* Stesiak Dep. ¶ 16.) However, the record contains a copy of the dismissal order from the Marshall Circuit Court, which is dated May 21, 2003. (DE # 46-7.) November 9, 2003, does appear to be a significant date in this

---

as "malpractice") are subject to some longer limitations period, plaintiff's "non-malpractice" claims survive summary judgment in terms of timeliness, because no argument is made that they should not. If the court adopts defendants' characterization of plaintiff's claims, the court's analysis herein regarding defendants' inability to meet their burden on summary judgment with regard to the statute of limitations applies equally to all of plaintiff's claims and, as this opinion further explains, defendants' motion is denied; in this situation, plaintiff's "non-malpractice" claims would still survive summary judgment. Either way, plaintiff's "non-malpractice" claims survive summary judgment on the issue of timeliness, and therefore the court need not decide whether plaintiff's claims "sound in malpractice" for purposes of the statute of limitations.

case, as on that date, Stesiak appears to have responded by letter to inquiries from Walton about the status of the Auto Owners case; specifically, Stesiak informed Walton that he had dismissed the lawsuit. (*See* Letter from Stesiak to Walton, DE # 41-5.) Accordingly, defendants might argue that plaintiff should be charged with having known of that lawsuit's dismissal, the termination of Stesiak's services, and/or the occurrence of malpractice on the part of Stesiak on November 9, 2003, given Stesiak's communications with Walton on that date.

However, defendants do not make this argument. Defendants do not even attempt to explain who Walton is or what role he or she may play in this litigation.[2] Instead defendants' argument, which they articulate repeatedly, is that "Stesiak eventually dismissed the lawsuit with prejudice (and with the knowledge and agreement of Hankovsky as the Plaintiff's attorney-in-fact) on November 9, 2003 . . . ." (Defs.' Mot. for Summ. J. 8.) This supposed version of the events is not supported by the record, and therefore the court is unable to conclude that defendants are entitled to summary judgment on this point. This is not the only confusing and/or factually unsupported assertion made by defendants in their motion. Where defendants have based their motion on the untimeliness of plaintiff's claims because information was communicated to plaintiff's agents, the critical nature of when events occurred and whom the events involved cannot be overstated.

---

[2] Neither party sufficiently explains who E. Spence Walton is, despite the relatively major role he or she appears to play in this case, at least from a statute of limitations standpoint.

It is also unclear whether defendants seek summary judgment on plaintiff's claims, as a substantive matter, regardless of the issue of timeliness. Defendants appear to broach this subject by arguing that plaintiff's fraud and breach of covenant claims fail due to a lack of proximate cause. (Defs.' Mot. for Summ. J. 14.) But after plaintiff attempted to ward off this attack in her response, defendants stated in their reply that "[o]f course, the Defendants' motion for summary judgment is not in any manner based upon the underlying merits of the Plaintiff's claims. . . . The Defendants demonstrated that there are no genuine issues as to any material fact regarding the lack of timeliness of the Plaintiff's claims . . . ." (Defs.' Reply at 2.) Accordingly, it is unclear whether defendants have abandoned their arguments regarding proximate causation or any other argument directed at the merits of plaintiff's case. Defendants are free to make a proximate cause challenge, along with any other arguments, in another properly filed motion. At this time, however, defendants have not presented a clear argument regarding what they seek and on what grounds.

Plaintiff has also muddled the water in this litigation. In her response to defendants' motion for summary judgment, plaintiff states, somewhat in passing, that she is actually the one who is entitled to summary judgment. (Pl.'s Resp. 17.) However, plaintiff fails to meaningfully develop this argument or explain to the court how she is entitled–legally or factually–to summary judgment. To do so, plaintiff would need to demonstrate that there are no genuine issues as to any material facts and that the

undisputed record shows her entitlement to judgment as a matter of law. As this order reveals, there are ample issues of material fact that have yet to be resolved.

Obviously, one significant hurdle for plaintiff is the statute of limitations. Though plaintiff defends against the statute of limitation by claiming that the discovery and continuous representation rules delay the date of accrual because she had no knowledge of the termination of the Auto Owners litigation or Stesiak's representation, plaintiff presents no admissible evidence as to when she actually did discover these facts. Her lawyers state that the discovery occurred in 2008, but her lawyer's statements are not evidence. Plaintiff has the burden of showing that the statute of limitations should be tolled. *Olcott Int'l. & Co. v. Micro Data Base Sys., Inc.*, 793 N.E.2d 1063, 1072 (Ind. App. Ct. 2003); *In re Paternity of K.H.*, 709 N.E.2d 1033, 1035 (Ind. App. Ct. 1999) ("party who relies on facts in avoidance of a statute of limitations has the burden of proving those facts"). She has not met this burden and has not satisfied the requirements for demonstrating entitlement to summary judgment.

## IV. CONCLUSION

For the foregoing reasons, the court has no choice but to conclude that defendants have failed to meet their burden to show that there are no genuine issues of material fact and that they are entitled to judgment as a matter of law. Accordingly, defendants' motion is **DENIED**. (DE # 35.) To the extent plaintiff has also moved for summary judgment, that motion is also **DENIED**. (DE # 45.) Plaintiff's motion to file a

sur-reply (DE # 49) and Rule 12(f) Motion to Strike (DE # 50) are **DENIED** as moot. Any other dispositive motions from either party must be filed by February 9, 2011.

**SO ORDERED.**

Date: November 9, 2010

s/James T. Moody
JUDGE JAMES T. MOODY
UNITED STATES DISTRICT COURT