UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| ELIZABETH STEFAN, aka, STEFAN GYORGNE, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 3:08 CV 471 ) |
| JEFFREY J. STESIAK, ESQ. and, SWEENEY, PFEIFER, MORGAN & STESIAK, | ) ) ) ) ) |
| Defendants. | ) |

## OPINION and ORDER

This matter is before the court on defendants' second motion for summary judgment pursuant to FEDERAL RULE OF CIVIL PROCEDURE 56 (DE # 57) and the parties' related motions to strike (DE ## 62, 72). For the reasons set forth below, the court denies as moot both motions to strike, denies defendants' motion for summary judgment, and establishes facts not in dispute pursuant to FEDERAL RULE OF CIVIL PROCEDURE 56(g).

## I. BACKGROUND [1]

This case stems from a single vehicle car accident that occurred on May 3, 1998, in which plaintiff, a resident of Hungary, was a passenger in a car driven by Lajos Vegso. As a result of the accident, plaintiff became (and continues to be) quadriplegic. Though the facts surrounding plaintiff's retention of the defendant, Jeffrey J. Stesiak, Esq., as her attorney are somewhat disputed, both parties appear to agree that Stesiak

---

[1] The facts of this case are summarized at length in the court's order on defendants' first motion for summary judgment (DE # 54). Only the facts relevant to this motion are recited herein.

proceeded to perform legal services for plaintiff following the accident in an attempt to recover money for her injuries.

Neither party appears to seriously dispute that Vegso, personally, was not a viable source of monetary recovery. However, Vegso had two insurance policies: one through Grange Mutual Insurance and one through Auto Owners Insurance. Through Stesiak, plaintiff received $100,000 of a possible $100,000 for bodily injury under the Grange policy. Plaintiff received the proceeds of the settlement with Grange in January 2001.

As part of the arrangement with Grange, plaintiff signed a Covenant Not To Sue or Execute (the "Covenant"), which released Grange from further liability. The Covenant was later modified by two addenda. The Covenant states:

> **COVENANT NOT TO SUE OR EXECUTE**
> This agreement, made and entered into this ____ day of ____, 2000 by and between Elizabeth Stefan of Hungary and Lajos Vegso of Tippecanone [sic], Indiana and Grange Mutual Insurance Company.
> Witnesseth that: . . .
> WHEREAS, negotiations between representatives of Elizabeth Stefan and Grange Mutual Insurance Company and Lajos Vegso have been undertaken for the sole purpose of terminating the pending claim between Elizabeth Stefan and Grange Mutual Insurance Company, leaving the pending claim between Elizabeth Stefan and Auto Owners Insurance Company; and
> NOW, THEREFORE, for and in consideration and promises and other good valuable consideration [sic], it is hereby agreed that Grange Mutual Insurance Company, as the insurer and representative of Lajos Vegso, shall pay to Elizabeth Stefan the sum of One Hundred Thousand Dollars ($100,000.00). Elizabeth Stefan does hereby covenant, undertake and agree to forever refrain and desist from

> instituting or asserting against Grange Mutual Insurance Company or assets of Lajos Vegso, with the exception of any additional insurance proceeds, of any claim for personal injury arising from the occurrence in question[.]

(DE # 1-2 at 1.) The Covenant is signed by plaintiff through her "attorney in fact," Zoltan Hankovszky, a New York attorney who it appears agreed to assist plaintiff by communicating with Stesiak in the United States while plaintiff continued to live in her native Hungary. However, the signatures spaces for Vegso and a representative of Grange are blank. The spaces in which a reader would expect to see a handwritten date are also blank. The first addendum to the Covenant states:

> **ADDENDUM TO THE**
> **COVENANT NOT TO SUE OR EXECUTE**
> Elizabeth Stefan of Hungary hereby agrees to satisfy any and all liens resulting from the injuries that she sustained in the automobile accident of May 3, 1998 and further agrees to hold Lajos Vegso and Grange Mutual Insurance Company harmless of those liens.

(*Id.* at 3.) The first addendum is signed only by plaintiff, through Hankovszky. The second addendum to the Covenant states:

> **SECOND ADDENDUM TO THE**
> **COVENANT NOT TO SUE OR EXECUTE**
> The Law Firm Sweeney, Pfeifer, Morgan, and Stesiak, located at 53600 North Ironwood Drive, South Bend, Indiana, 46635, by Jeffrey Stesiak, hereby agrees to satisfy any and all liens, claims, demands, actions and causes of action, for any damages, costs, loss of services, expenses and compensations, heretofore or hereafter sustained on account of, or in any way growing out of an accident, casualty or event that occurred on May 3, 1998, resulting from the injuries sustained by Elizabeth Stefan, and further, agrees to hold harmless and indemnify Lajos Vegso and Grange Mutual Insurance.

(*Id.* at 4.) The Second Addendum is signed only by defendant Sweeney, Pfeifer, Morgan, and Stesiak through defendant Jeffrey Stesiak, and contains a handwritten addition that states: "Does not preclude claims to any other insurance company J.S." (*Id.*)

In April of 2000, Stesiak filed suit on plaintiff's behalf against Vegso in Marshall County Circuit Court to seek recovery under the Auto Owners policy. The record indicates that this case concluded on May 21, 2003, when the court accepted the parties' stipulation of dismissal with prejudice. The parties dispute whether plaintiff knew of and/or agreed to the dismissal. Stesiak claims that he dismissed the suit because he learned that the Auto Owners insurance policy contained an exclusion for bodily injury (*see* Auto Owners policy, DE # 37-3 at 5), an exclusion which Stesiak believed rendered plaintiff's claim against Auto Owners meritless. Stesiak further claims that he discussed the matter with Hankovszky, who assented to the dismissal of the action. Plaintiff claims that she did not know that the Auto Owners suit was dismissed until 2008.

On October 16, 2008, plaintiff filed suit against Stesiak and his firm, Sweeney, Pfeifer, Morgan, & Stesiak, alleging legal malpractice, breach of contract based on the Second Addendum to the Covenant Not to Sue, fraud, and breach of fiduciary duty. The basic thrust of plaintiff's lawsuit is that Stesiak erred in failing to properly pursue recovery under the Auto Owners Insurance policy.

On December 7, 2009, defendants moved for summary judgment alleging that plaintiffs' claims were filed in excess of the statute of limitations. This court denied the motion because defendants failed to show that there were no genuine issues of material

4

fact relevant to the issue of when plaintiff's claims accrued and the limitations period began running. (DE # 54.) This court set a deadline for the filing of any further dispositive motions, and defendants timely filed the present motion for summary judgment. Plaintiff responded (DE # 64) and defendants replied (DE # 70). Magistrate Judge Christopher A. Nuechterlein denied plaintiff's motion to file a sur-reply because the issues were sufficiently briefed. (DE # 71.)

During the summary judgment briefing period, each party filed a motion to strike certain materials filed by the opposing party. Specifically, defendants moved to strike the affidavit of David Kasper and its accompanying exhibit (DE # 62), and plaintiff moved to strike defendants' objection to the declaration of Dr. Krisztian Frohlich. (DE # 72.) As is evident from the discussion below, neither Kasper's affidavit nor Dr. Frohlich's declaration is necessary for the resolution of defendants' motion for summary judgment. Accordingly, both motions to strike are denied as moot and the remainder of this opinion focuses only on defendants' motion for summary judgment.

## II.   LEGAL STANDARD

FEDERAL RULE OF CIVIL PROCEDURE 56 requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "[S]ummary judgment is appropriate–in fact, is mandated–where there are no disputed issues of material fact and the movant must prevail as a matter of law.

In other words, the record must reveal that no reasonable jury could find for the non-moving party." *Dempsey v. Atchison, Topeka, & Santa Fe Ry. Co.,* 16 F.3d 832, 836 (7th Cir. 1994) (citations and quotation marks omitted).

The moving party bears the initial burden of demonstrating that these requirements have been met; it may discharge this responsibility by showing that there is an absence of evidence to support the non-moving party's case. *Carmichael v. Village of Palatine, Ill.,* 605 F.3d 451, 460 (7th Cir. 2010) (citing *Celotex,* 477 U.S. at 323). To overcome a motion for summary judgment, the non-moving party must come forward with specific facts demonstrating that there is a genuine issue for trial. *Id.* (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986)). The existence of a mere scintilla of evidence, however, is insufficient to fulfill this requirement. *Id.* (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251-52 (1986)). The nonmoving party must show that there is evidence upon which a jury reasonably could find for him. *Id.*

The court's role in deciding a summary judgment motion is not to evaluate the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *Anderson,* 477 U.S. at 249-50; *Doe v. R.R. Donnelley & Sons Co.,* 42 F.3d 439, 443 (7th Cir. 1994). In viewing the facts presented on a motion for summary judgment, the court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences in favor of that party. *NLFC, Inc. v. Devcom Mid-Am., Inc.,* 45 F.3d 231, 234 (7th Cir. 1995); *Doe,* 42 F.3d at 443.

FEDERAL RULE OF CIVIL PROCEDURE 56(g) allows a court to deny a technically inadequate motion for summary judgment, but still find that certain material facts are not genuinely in dispute. The rule states:

> **Failing to Grant All the Requested Relief.** If the court does not grant all the relief requested by the motion [for summary judgment], it may enter an order stating any material fact– including an item of damages or other relief– that is not genuinely in dispute and treating the fact as established in the case.

By utilizing this procedure, a court may avoid wasting the effort involved in reviewing the factual record on a party's motion for summary judgment. MOORE'S FED. PRACTICE 3D, § 56.123[1]. When applying RULE 56(g), the court utilizes standard summary judgment principles in determining the existence of undisputed facts. *Melvin v. Patterson,* 965 F. Supp. 1212, 1214 (S.D. Ind. 1997).

### III.   DISCUSSION

#### A.   Plaintiff's Legal Malpractice and Fraud Claims

Defendants' first argument is that they are entitled to summary judgment on plaintiff's legal malpractice and fraud claims because plaintiff lacks proof of damages proximately caused by defendants' actions. (DE # 58-1 at 7.) Defendants limit their argument to only one of the many allegedly wrongful acts that plaintiff sets forth in her complaint: Stesiak's dismissal of plaintiff's Auto Owners suit without her knowledge or consent. (DE # 70-1 at 1, expressly limiting basis of motion for summary judgment.)

Proximately caused damage is indeed a necessary element that must be established by any plaintiff alleging legal malpractice or fraud. *Flatow v. Ingalls,* 932

7

N.E.2d 726, 729 (Ind. Ct. App. 2010) (legal malpractice); *Pugh's IGA, Inc. v. Super Food Servs., Inc.,* 531 N.E.2d 1194, 1197 (Ind. App. Ct. 1988) (fraud). Accordingly, by pointing out that plaintiff lacks proof of damages proximately caused by defendants' actions, defendants have met their burden on their motion for summary judgment. *Celotex,* 477 U.S. at 325.

In order to survive summary judgment, plaintiff is required to set forth not merely allegations, but "fresh proof" demonstrating a genuine issue as to the existence of damages proximately caused by defendants' dismissal of the Auto Owners' suit. *Anderson,* 477 U.S. at 248. When a case involves allegations that a lawyer acted improperly during the course of litigation, demonstrating proximate cause requires the plaintiff to show at a minimum that the outcome of the underlying litigation would have been more favorable but for the attorney's actions. *See, e.g., Flatow,* 932 N.E.2d at 729. Such proof typically requires a "trial within a trial." *Id.*

Plaintiff has made virtually no attempt to establish that the outcome of the underlying litigation – in this case, the Auto Owners suit – would have been any more favorable but for Stesiak's decision to dismiss it. The record indicates that the Auto Owners policy contained a "bodily injury" exclusion, which appears to apply to the injuries plaintiff sustained. However, plaintiff makes no attempt to argue that, despite this exclusion, she still would have prevailed in the Auto Owners lawsuit. She simply points to the fact that after Stesiak filed suit against Auto Owners on plaintiff's behalf, Auto Owners set aside an internal reserve of $30,000. (DE # 64-1 at 2, 12.) This fact is

only indicative of Auto Owners' internal policies regarding pending litigation; it says nothing about whether a fact-finder ultimately would have found in plaintiff's favor in the lawsuit. No reasonable jury could find that plaintiff would have been successful in the Auto Owners suit based solely on Auto Owners' decision to set aside an internal reserve.

In sum, plaintiff has failed to create an issue of fact as to whether the outcome of the Auto Owners suit would have been more favorable but for Stesiak's actions. However, because plaintiff's complaint contains allegations of legal malpractice and fraud premised upon actions by defendants other than the dismissal of the Auto Owners suit,[2] and because defendants have not addressed these additional allegations in their motion for summary judgment, the court cannot grant summary judgment as to the entirety of plaintiff's legal malpractice and fraud claims. Nonetheless, pursuant to RULE 56(g), the court finds that it is not genuinely in dispute that defendants' dismissal of the Auto Owners suit without plaintiff's knowledge or permission was not the proximate cause of any damages to plaintiff. This fact will now be treated as established for purposes of this case. FED. R. CIV. P. 56(g).

---

[2] For example, plaintiff argues that defendants failed to sue Auto Owners for an illusory promise of coverage to a business it knew required travel (DE # 64-1 at 15); defendants failed to sue Auto Owners for failure to deal with Vegso in good faith (*id.*); defendants failed to obtain an assignment of Vegso's rights under or against the Auto Owners policy (*id.*); and defendants failed to sue Auto Owners or Vegso's insurance agent for failure to recommend or procure coverage for motor vehicle related liability (*id.* at 16).

### B. Plaintiff's Breach of Contract Claim

In her complaint, plaintiff alleged that through the Second Addendum, defendants assumed a burden to satisfy all liens, claims, etc., sustained on account of the accident. (DE # 1 at 7.) Plaintiff further alleged that she had been damaged by the events of May 3, 1998, had not been compensated for those damages, and was entitled to compensation from defendants for those damages due to defendants' promise in the Second Addendum. (*Id.*)

Defendants have moved for summary judgment on plaintiff's breach of contract claim on the basis that plaintiff has no legal right to sue defendants on the Second Addendum because she was not a party to the Addendum, nor was she in privity with any party to the Addendum. (DE # 58-1 at 8-9.) Defendants further argue that the contract was intended to protect Vegso and Grange against healthcare or hospital-related liens, and that it would be "irrational" to propose that defendants agreed to pay for plaintiff's claims. (*Id.* at 9.) In response, plaintiff argues that the contract is clear, within its four corners, that plaintiff has a legal right to sue defendants, because her claim exists on account of the accident. (DE # 64-1 at 19.)

"[W]here the language of a contract is plain as to the intent of the parties, that language is conclusive." *Fort Wayne Cablevision v. Ind. & Mich. Elec. Co.,* 443 N.E.2d 863, 867 (Ind. Ct. App. 1983). Further, "[w]here the terms of a contract are unambiguous, the meaning of the contract is determined as a matter of law." *Evans v. Med. & Prof. Collection Servs., Inc.,* 741 N.E.2d 795, 797 (Ind. Ct. App. 2001). A contract term is

ambiguous if "reasonably intelligent people could honestly differ" as to the contract's meaning. *Farthing v. Life Ins. Co. of N. Am.*, 500 N.E.2d 767, 770 (Ind. Ct. App. 1986).

In this case, the language of the Second Addendum clearly shows the parties' intention that the Second Addendum function as a modification of the Covenant and the First Addendum. The fact that the document is blatantly labeled "SECOND ADDENDUM TO THE COVENANT NOT TO SUE OR EXECUTE" supports this reading, and there certainly is no language in the contract to suggest the contrary. Further, plaintiff is plainly a signatory to the Covenant and First Addendum, which the Second Addendum modifies. Accordingly, defendants have not successfully argued that plaintiff is not a party to the agreement she seeks to enforce.

True, parties to a contract can only enforce those duties that were owed *to them*. *Vectren Engergy Mktg. & Serv., Inc. v. Executive Risk Speciality Ins. Co.*, 875 N.E.2d 774, 778 (Ind. Ct. App. 2007). But in this case, there is no ambiguity that the Second Addendum describes a duty owed by defendants to plaintiff. The defendants agreed to "satisfy any and all liens, claims, [etc.] . . . heretofore or hereafter sustained on account of, or in any way growing out of" plaintiff's accident. (DE # 1-2 at 4.) The Second Addendum does not contain language limiting the "liens, claims, [etc.]" to those filed against Vegso or Grange, or to healthcare or hospital-related liens, as defendant argues. Under a plain reading of the contract, defendants agreed to satisfy all claims relating to the accident, period.[3] Reasonably intelligent people would conclude that this includes plaintiff's

---

[3] The court makes no comment on the enforceability of such a promise.

claims. This promise may be "irrational," as defendants assert, but it is still the promise defendants made. To side with defendants on this issue would be to "twist [the words of the contract] out of their common and ordinary meaning and to try and create an ambiguity where none actually exists." *Farthing,* 500 N.E.2d at 770. In sum, the undisputed facts do not demonstrate that plaintiff has no right to sue on the Second Addendum. Thus, defendants' motion for summary judgment on this claim is denied.[4]

---

[4] It is important to note that defendant explicitly moved for summary judgment solely on issue of plaintiff's legal right to assert the breach of contract claim, not the merits of the claim itself. Accordingly, the court confined its analysis to this one issue. *See Pourghoraishi v. Flying J., Inc.,* 449 F.3d 751, 765-66 (7th Cir. 2006) (reversing district court's decision to grant summary judgment on ground not raised in motion).

Nevertheless, the language of this curious, purported contract, which defendants themselves admit was "inartfully drafted" (DE # 58-1 at 9), raises a panoply of questions. Some straightforward concerns present themselves immediately: in the copy of the contract attached to the complaint, the Covenant itself is signed only by plaintiff, and no one else, and both Addenda are signed by one party only. It is also unclear what consideration was given in exchange for either Addenda.

But attempting to actually *apply* the contract to hypothetical situations raises far more complicated questions. For instance, though the Second Addendum states that defendants will satisfy all claims, it does not state which side defendants should be on in the case of two parties making claims *against each other*. It is also unclear what should happen if someone were to sue one of the named beneficiaries of the indemnification provision, such as Vegso: would defendants be required to indemnify Vegso, or would they be required to satisfy the claim made against Vegso, or both? What if Vegso and Grange sued each other?

Further, how are defendants to "satisfy" a claim filed against itself, such as plaintiff's? Are defendants permitted to wage any defense against plaintiff's claims, or is that counter to the concept of satisfaction? If defendants ultimately are required to pay a judgment in this action, is payment of that judgment sufficient to "satisfy" the claim, and if so, is the Second Addendum not duplicative of the duties that would exist by operation of law in light of the judgment?

Unfortunately, the myriad of issues plaguing this admittedly "inartfully drafted" document is not before the court. Instead, these questions, and many others, will be in the hands of jurors if this case fails to result in an amicable resolution and instead proceeds to trial.

12

## IV. CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment is **DENIED**. (DE # 57.) However, pursuant to R ULE 56(g), it will be treated as established for purposes of this case that defendants' dismissal of the Auto Owners suit was not the proximate cause of any damages to plaintiff. Both plaintiff's and defendants' motions to strike are **DENIED** as moot. (DE # 62, 72.)

                                        **SO ORDERED.**

Date: February 8, 2012

                                s/James T. Moody
                                JUDGE JAMES T. MOODY
                                UNITED STATES DISTRICT COURT